# BELL v. UNITED STATES

No. 82–5119.   Argued April 25, 1983—Decided June 13, 1983

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, MARSHALL, BLACKMUN, REHNQUIST, and O'CON-NOR, JJ., joined.   STEVENS, J., filed a dissenting opinion, *post*, p. 362.

*Roy W. Allman,* by appointment of the Court, 459 U. S. 1100, argued the cause and filed a brief for petitioner.

*Associate Attorney General Giuliani* argued the cause for the United States. On the brief were *Solicitor General Lee, Assistant Attorney General Jensen, Elliott Schulder,* and *Sara Criscitelli.*

JUSTICE POWELL delivered the opinion of the Court.

The issue presented is whether 18 U. S. C. § 2113(b), a provision of the Federal Bank Robbery Act, proscribes the crime of obtaining money under false pretenses.

## I

On October 13, 1978, a Cincinnati man wrote a check for $10,000 drawn on a Cincinnati bank. He endorsed the check for deposit to his account at Dade Federal Savings & Loan of Miami and mailed the check to an agent there. The agent never received the check. On October 17, petitioner Nelson Bell opened an account at a Dade Federal branch and deposited $50—the minimum amount necessary for new accounts. He used his own name, but gave a false address, birth date, and social security number. Later that day, at another branch, he deposited the Cincinnati man's $10,000 check into this new account. The endorsement had been altered to show Bell's account number. Dade Federal accepted the deposit, but put a 20-day hold on the funds. On November 7, as soon as the hold had expired, Bell returned to the branch at which he had opened the account. The total balance, with accrued interest, was then slightly over $10,080. Bell closed the account and was paid the total balance in cash.

Bell was apprehended and charged with violating 18 U. S. C. § 2113(b). The statute provides, in relevant part:

> "Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank,

credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both . . . ."

Bell was convicted after a jury trial in the United States District Court for the Southern District of Florida.

On appeal, a divided panel of the United States Court of Appeals for the Fifth Circuit reversed the conviction on the ground that there was insufficient evidence of specific intent. 649 F. 2d 281 (1981). The en banc court granted the Government's petition for rehearing, however, and affirmed the conviction. 678 F. 2d 547 (1982) (Unit B). In so doing, it concluded that the statute embraces all felonious takings— including obtaining money under false pretenses. The court thus rejected Bell's argument that § 2113(b) is limited to common-law larceny. *Id.*, at 548–549. Because this conclusion is inconsistent with that reached in *United States* v. *Feroni*, 655 F. 2d 707, 708–711 (CA6 1981), and *LeMasters* v. *United States*, 378 F. 2d 262, 267–268 (CA9 1967), we granted certiorari to resolve the conflict.[1]  459 U. S. 1034 (1982). We now affirm.

II

In the 13th century, larceny was limited to trespassory taking: a thief committed larceny only if he feloniously "took and carried away" another's personal property *from his possession.* The goal was more to prevent breaches of the peace than losses of property, and violence was more likely when property was taken from the owner's actual possession.

---

[1] Most Courts of Appeals have taken a broad reading of § 2113(b). See, *e. g.*, *United States* v. *Hinton*, 703 F. 2d 672, 675–677 (CA2 1983), cert. denied, *post*, p. 1121; *United States* v. *Shoels*, 685 F. 2d 379, 381–383 (CA10 1982), cert. pending, No. 82–5550; *United States* v. *Simmons*, 679 F. 2d 1042, 1045–1049 (CA3 1982), cert. pending *sub nom. Brown* v. *United States*, No. 82–5201; *United States* v. *Guiffre*, 576 F. 2d 126, 127–128 (CA7), cert. denied, 439 U. S. 833 (1978); cf. *United States* v. *Johnson*, 575 F. 2d 678, 679–680 (CA8 1978) (dictum); but see *United States* v. *Rogers*, 289 F. 2d 433, 437–438 (CA4 1961) (dictum).

As the common law developed, protection of property also became an important goal. The definition of larceny accordingly was expanded by judicial interpretation to include cases where the owner merely was deemed to be in possession. Thus when a bailee of packaged goods broke open the packages and misappropriated the contents, he committed larceny. *The Carrier's Case*, Y. B. Pasch. 13 Edw. IV, f. 9, pl. 5 (Star Ch. and Exch. Ch. 1473), reprinted in 64 Selden Society 30 (1945). The bailor was deemed to be in possession of the contents of the packages, at least by the time of the misappropriation. Similarly, a thief committed "larceny by trick" when he obtained custody of a horse by telling the owner that he intended to use it for one purpose when he in fact intended to sell it and to keep the proceeds. *King* v. *Pear*, 1 Leach 212, 168 Eng. Rep. 208 (Cr. Cas. Res. 1779). The judges accepted the fiction that the owner retained possession of the horse until it was sold, on the theory that the thief had custody only for a limited purpose. *Id.*, at 213–214, 168 Eng. Rep., at 209.

By the late 18th century, courts were less willing to expand common-law definitions. Thus when a bank clerk retained money given to him by a customer rather than depositing it in the bank, he was not guilty of larceny, for the bank had not been in possession of the money. *King* v. *Bazeley*, 2 Leach 835, 168 Eng. Rep. 517 (Cr. Cas. Res. 1799). Statutory crimes such as embezzlement and obtaining property by false pretenses therefore were created to fill this gap.[2]

The theoretical distinction between false pretenses and larceny by trick may be stated simply. If a thief, through his trickery, acquired *title* to the property from the owner, he has obtained property by false pretenses; but if he merely acquired *possession* from the owner, he has committed larceny

---

[2] The historical development of common-law larceny and related crimes is discussed in detail in several treatises. See, *e. g.*, W. LaFave & A. Scott, Handbook on Criminal Law 618–622 (1972); J. Hall, Theft, Law and Society 3–58 (2d ed. 1952).

by trick. See LaFave & Scott, *supra* n. 2, at 660–662. In this case the parties agree that Bell is guilty of obtaining money by false pretenses. When the teller at Dade Federal handed him $10,080 in cash, Bell acquired title to the money. The only dispute is whether 18 U. S. C. § 2113(b) proscribes the crime of false pretenses, or whether the statute is instead limited to common-law larceny.

## III

### A

Bell's argument in favor of the narrower reading of § 2113(b) relies principally on the statute's use of the traditional common-law language "takes and carries away." He cites the rule of statutory construction that when a federal criminal statute uses a common-law term without defining it, Congress is presumed to intend the common-law meaning. See *United States* v. *Turley*, 352 U. S. 407, 411 (1957). In § 2113(b), however, Congress has not adopted the elements of larceny in common-law terms. The language "takes and carries away" is but one part of the statute and represents only one element of common-law larceny. Other language in § 2113(b), such as "with intent to steal or purloin," has no established meaning at common law. See *Turley, supra,* at 411–412. Moreover, "taking and carrying away," although not a necessary element of the crime, is entirely consistent with false pretenses.

Two other aspects of § 2113(b) show an intention to go beyond the common-law definition of larceny. First, common-law larceny was limited to thefts of tangible personal property. This limitation excluded, for example, the theft of a written instrument embodying a chose in action. LaFave & Scott, *supra* n. 2, at 633. Section 2113(b) is thus broader than common-law larceny, for it covers "any property or money or any other thing of value exceeding $100." Second, and of particular relevance to the distinction at issue here, common-law larceny required a theft from the possession of

the owner. When the definition was expanded, it still applied only when the owner was deemed to be in possession. Section 2113(b), however, goes well beyond even this expanded definition. It applies when the property "belong[s] to," or is "in the care, custody, control, management, or possession of," a covered institution.

In sum, the statutory language does not suggest that it covers only common-law larceny. Although § 2113(b) does not apply to a case of false pretenses in which there is not a taking and carrying away, it proscribes Bell's conduct here. The evidence is clear that he "t[ook] and carrie[d] away, with intent to steal or purloin, [over $10,000 that was] in the care, custody, control, management, or possession of" Dade Federal Savings & Loan.

B

The legislative history of § 2113(b) also suggests that Congress intended the statute to reach Bell's conduct. As originally enacted in 1934, the Federal Bank Robbery Act, ch. 304, 48 Stat. 783, governed only robbery—a crime requiring a forcible taking. Congress apparently was concerned with "'gangsters who operate habitually from one State to another in robbing banks.'"[3] S. Rep. No. 537, 73d Cong., 2d Sess., 1 (1934) (quoting Justice Department memorandum); see 78 Cong. Rec. 2946–2947 (1934); H. R. Rep. No. 1461, 73d Cong., 2d Sess., 2 (1934).

By 1937 the concern was broader, for the limited nature of the original Act "'ha[d] led to some incongruous results.'" H. R. Rep. No. 732, 75th Cong., 1st Sess., 1 (1937) (quoting Attorney General's letter to the Speaker). It was possible for a thief to steal a large amount from a bank "'without displaying any force or violence and without putting any one in fear,'" id., at 2, and he would not violate any federal law.

---

[3] The narrow concern of the 1934 Congress is illustrated in its rejection of a broad bill that would have gone well beyond bank robbery. The rejected bill, for example, explicitly would have covered taking property by false pretenses. S. 2841, 73d Cong., 2d Sess., § 2 (1934).

Congress amended the Act to fill this gap, adding language now found at §§ 2113(a) and (b). Act of Aug. 24, 1937, ch. 747, 50 Stat. 749. Although the term "larceny" appears in the legislative Reports, the congressional purpose plainly was to protect banks from those who wished to steal banks' assets—even if they used no force in doing so.

The congressional goal of protecting bank assets is entirely independent of the traditional distinction on which Bell relies. To the extent that a bank needs protection against larceny by trick, it also needs protection from false pretenses. We cannot believe that Congress wished to limit the scope of the amended Act's coverage, and thus limit its remedial purpose, on the basis of an arcane and artificial distinction more suited to the social conditions of 18th-century England than the needs of 20th-century America. Such an interpretation would signal a return to the "incongruous results" that the 1937 amendment was designed to eliminate.

## IV

We conclude that 18 U. S. C. § 2113(b) is not limited to common-law larceny.[4] Although § 2113(b) may not cover the full range of theft offenses, it covers Bell's conduct here. His conviction therefore was proper, and the judgment of the Court of Appeals accordingly is

*Affirmed.*

JUSTICE STEVENS, dissenting.

Although federal criminal statutes that are intended to fill a void in local law enforcement should be construed broadly, see, *e. g.*, *United States* v. *Staszcuk*, 517 F. 2d 53, 57–58 (CA7 1975) (en banc), I take a different approach to federal

---

[4] There are dicta in *Jerome* v. *United States*, 318 U. S. 101 (1943), that suggest a narrow reading of § 2113(b), but our conclusion today is consistent with the *Jerome* holding. The only issue then before the Court was whether the Act's burglary provision, now codified in § 2113(a), proscribed entering a bank to commit a state-law felony.

laws that merely subject the citizen to the risk of prosecution by two different sovereigns. See, *e. g., United States* v. *Altobella,* 442 F. 2d 310, 316 (CA7 1971). When there is no perceivable obstacle to effective state enforcement, I believe federal criminal legislation should be narrowly construed unless it is clear that Congress intended the coverage in dispute. *McElroy* v. *United States,* 455 U. S. 642, 675 (1982) (STEVENS, J., dissenting); see *Jerome* v. *United States,* 318 U. S. 101, 104–105 (1943).

The history of the bank robbery and bank larceny legislation enacted in 1934 and 1937 persuades me that Congress did not intend federal law to encompass the conduct of obtaining funds from a bank with its consent, albeit under false pretenses. The 1934 Act was a response to the spate of armed bank robberies committed by John Dillinger and other traveling gunmen who outwitted and outmaneuvered a series of local police forces as they moved from State to State in the early 1930's.[1] Congress responded to local requests for federal assistance by enacting a statute that prohibited robbery of federal banks, but rejected the section initially passed by the Senate that made larceny by false pretenses a federal

---

[1] The Department of Justice explained the need for new legislation largely by reference to the problem of armed robberies, though it recommended a bill broad enough to cover larceny by false pretenses as well. Its memorandum, quoted in the House Report, explains:

"This bill is directed at one of the most serious forms of crime committed by organized gangsters who operate habitually from one State to another— the robbery of banks. From all sections of this country Federal relief has been requested. It is asserted that these criminals are sufficiently powerful and well equipped to defy local police, and to flee beyond the borders of the State before adequate forces can be organized to resist and capture these bandits." H. R. Rep. No. 1461, 73d Cong., 2d Sess., 2 (1934); see S. Rep. No. 537, 73d Cong., 2d Sess., 1 (1934).

Indeed, the 1934 floor debates in the House included a clear reference to one of Dillinger's well-known escapades. Representative Blanton noted that a man might go into a bank with intent to rob, and "he might use one of these new kind of Indiana six shooters carved out of a piece of wood with a pocket knife." 78 Cong. Rec. 8132 (1934).

offense.[2]   It is clear that Congress did not intend the federal law to overlap state jurisdiction to any greater extent than was necessary to cope with the specific evil that had given rise to the legislation.[3]

---

[2] For the Department of Justice's memoranda to Congress, see H. R. Rep. No. 1461, *supra* n. 1, at 2; S. Rep. No. 537, *supra* n. 1, at 1.   The Senate bill provided, in part:

"Whoever, not being entitled to the possession of property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, takes and carries away, or attempts to take and carry away, such property or money or any other thing of value from any place (1) without the consent of such bank, or (2) *with the consent of such bank obtained by the offender by any trick, artifice, fraud, or false or fraudulent representation,* with intent to convert such property or money or any other thing of value to his use or to the use of any individual, association, partnership, or corporation, other than such bank, shall be punished by a fine of not more than $5,000 or imprisonment for not more than 10 years, or both."   S. 2841, § 2, 73d Cong., 2d Sess., 78 Cong. Rec. 8132 (1934) (emphasis supplied).

The House Judiciary Committee recommended that § 2, making bank larceny a federal crime, be stricken out.   The House accepted the Committee amendment, and the Senate accepted the changes.   *Id.*, at 8767, 8776. During floor discussion of the Committee Report, Representative Hatton Sumners, longtime Chairman of the House Judiciary Committee, made clear his reluctance to extend federal criminal jurisdiction.   He explained, in opposing a proposed amendment extending the reach of the bill to other governmental institutions: "I may say to the gentleman that we are going rather far in this bill, since all the property is owned, as a rule, by the citizens of the community where the bank is located.   The committee was not willing to go further, and the Attorney General did not ask it to go further."   *Id.*, at 8133.   As a contemporary observer noted, Sumners "sought throughout the session to confine extensions of federal power to those situations where the need to supplement state and local law enforcing agencies had become imperative."   A Note on the Racketeering, Bank Robbery, and "Kick-Back" Laws, 1 Law & Contemp. Prob. 445, 448–449 (1934).

[3] The Department of Justice expressly stated in its memorandum:

"There is no intention that the Federal Government shall supersede the State authorities in this class of cases.   It will intervene only to cooperate with local forces when it is evident that the latter cannot cope with the criminals."   H. R. Rep. No. 1461, *supra* n. 1, at 2.

Three years later the bank robbery statute was amended at the request of Attorney General Cummings. The Attorney General specifically described the anomaly created by the statute's failure to cover larceny by stealth, theft of money from a bank without violence but also clearly without the bank's consent.[4] The amendment—making burglary and "larceny" of federal banks a federal crime—was adopted routinely, without significant comment or debate.[5] It is fair to infer that Congress viewed the amendment as a limited change that was entirely consistent with the intent of the 1934 Act, including the intent of legislators who perceived a danger in encouraging the unnecessary growth of a national police force.

This interpretation of the legislative history was accepted by all of the Members of this Court in *Jerome* v. *United States*, 318 U. S. 101 (1943), a case decided only six years after the passage of the bank larceny statute. The defendant in that case had been convicted in federal court for entering a national bank with intent to utter a forged promissory note. Although the Court was construing a different section of the statute, its discussion of Congress' intent is equally applicable to the section involved in this case.[6] Justice Douglas observed:

---

[4] "The fact that the statute is limited to robbery and does not include larceny and burglary has led to some incongruous results. A striking instance arose a short time ago, when a man was arrested in a national bank while walking out of the building with $11,000 of the bank's funds on his person. He had managed to gain possession of the money during a momentary absence of one of the employees, without displaying any force or violence and without putting any one in fear—necessary elements of the crime of robbery—and was about to leave the bank when apprehended. As a result, it was not practicable to prosecute him under any Federal statute." H. R. Rep. No. 732, 75th Cong., 1st Sess., 1–2 (1937).

[5] See, *e. g.*, 81 Cong. Rec. 5376–5377 (1937).

[6] The provision construed by the Court made it a federal offense to enter any bank with intent to commit "any felony or larceny." The Court expressly noted that the term "larceny" was defined in the statute itself—a reference to the section at issue here. 318 U. S., at 105, 106.

"It is difficult to conclude in the face of this history that Congress, having rejected in 1934 an express provision making state felonies federal offenses, reversed itself in 1937 . . . . It is likewise difficult to believe that Congress, through the same clause, adopted by indirection in 1937 much of the fraud provision which it rejected in 1934." *Id.*, at 105–106.

Further, the Court noted, "there is not the slightest indication that the interstate activities of gangsters against national and insured banks had broken down or rendered ineffective enforcement of state laws covering all sorts of felonies." *Id.*, at 107.[7]

Given the strong evidence of Congress' specific, limited intent, I would confine the bank larceny statute to takings without the bank's consent. Although I cannot deny that the Court's construction of the statutory language is plausible, the language remains ambiguous. I would not at this late date repudiate *Jerome*'s understanding of Congress' intent. I therefore respectfully dissent.

---

[7] As the Ninth Circuit wrote in *LeMasters* v. *United States*, 378 F. 2d 262, 268 (1967), quoted in full in *United States* v. *Feroni*, 655 F. 2d 707, 710–711 (CA6 1981):

"In the bank situation we see no reason, urgent or otherwise, why Congress in 1937 should have wanted to enter the field of obtaining by false pretenses, duplicating state law which was adequate and effectively enforced, and the duplication of which would bring innumerable cases, most of them small, within the jurisdiction of federal prosecutors and courts. Congress was as aware in 1937 as it was in 1934, when it rejected the unambiguous provision making obtaining by false pretense from a bank [a] federal crime, that such an extension of federal law would serve no purpose except to confuse and dilute state responsibility for local crimes which were being adequately dealt with by state law."