**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Wilmotine B. JACKSON,**
**Defendant-Appellant.**

**No. 84–8619**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

June 4, 1985.

---

Vernon S. Pitts, Jr., Atlanta, Ga., for defendant-appellant.

Richard H. Dean, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Wilmotine Jackson, a former Atlanta-area physician, appeals from her convictions for using the mails to effectuate a conspiracy to defraud insurance companies under 18 U.S.C. §§ 371, 1341. Appellant raises two substantial issues: whether the trial court erred in admitting evidence under Rule 404(b), Fed.R.Evid., of her participation in a similar unrelated scheme; and whether the evidence presented at trial was sufficient to sustain her convictions. We affirm the convictions.

## I. FACTS

This case involves an insurance fraud scheme in which the conspirators would stage automobile accidents, file false insurance claims, and divide the insurance proceeds among themselves. The ringleaders of the conspiracy were Freemont, an attorney, and Green, an Allstate insurance claims adjuster, who devised a plan whereby Freemont would recruit friends and relatives to stage and report fraudulent automobile accidents in order to receive benefit payments from Allstate. Freemont represented, as counsel, the persons allegedly injured in these accidents, and Green acted

to insure that the claims would be paid by Allstate.

In order for this scheme to succeed, it was necessary to involve a physician who would certify various alleged injuries. To this end, the conspirators received the aid of appellant, who was known to be a chronic alcoholic. On several occasions, some of the conspirators filled out attending physician reports (APRs) and medical bills alleging that they had been treated for injuries resulting from the accidents, brought those forms over to the appellant in her office for her to sign, then picked up the signed forms from the appellant and mailed them to the insurance company.

Most of the conspirators pled guilty and testified for the government. It was undisputed at trial that appellant had signed the APRs and medical bills that were submitted to the insurance company, although she had not treated or examined any of these "patients." The sole issue at trial was appellant's knowledge and intent. There was some testimony at trial that appellant was unaware of the existence of a conspiracy; that she was involved in the scheme only because, as an alcoholic, she was easily manipulated; and that she was tricked into signing the forms. On the other hand, there was contrary testimony that appellant was aware of the conspiracy and received distributions of money through the scheme. She was convicted and sentenced to serve one year imprisonment on one count, two years on others (suspended), and five years probation.

## II. EXTRINSIC ACT EVIDENCE

During the trial, the government was permitted to admit evidence, pursuant to Rule 404(b), Fed.R.Evid., that in August, 1981 (just after the events leading to the present case had occurred), appellant had accepted money for providing fraudulent medical excuses for General Motors employees to document unexcused absences.[1] The district court took a thorough proffer of the evidence outside the presence of the jury and permitted the evidence to be admitted, finding that it was very probative on the sole issue in the case—appellant's intent and knowledge.

■ *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), sets up a two-step test for determining the admissibility of extrinsic act evidence under Rule 404(b): first, the extrinsic act must be relevant to an issue other than the defendant's character; and second, the probative value of the evidence must not be substantially outweighed by its undue prejudice.

■ Where the issue addressed is the defendant's intent to commit the crime charged, the "relevancy" step under Rule 404(b) is satisfied "once it is determined that the extrinsic offense requires the same intent as the charged offense and that the jury could find that the defendant committed the extrinsic offense." *Id.* at 913. This step is satisfied in the present case: there is no doubt that appellant committed the extrinsic offense, and the extrinsic offense (writing out fraudulent medical excuses) required exactly the same intent as the charged offense (signing fraudulent APRs and medical bills).

The probative value of the extrinsic act evidence far outweighed the danger of undue prejudice in the instant case. The probative value was great: the government had little evidence on intent, which made this evidence near essential; the extrinsic offense was almost identical to the charged offense, both involving the providing of false medical information to substantiate claims (of injury or sickness); the extrinsic act occurred only a short time after the charged offense; and the intent and knowledge of the appellant was the critical issue at trial. *See United States v. Astling*, 733 F.2d 1446, 1457 (11th Cir.1984) (list of factors as to probative value); *Beechum*, 582

---

1. This evidence consisted of the testimony of an undercover FBI agent who had posed as a General Motor's employee and obtained a fraudu-

lent medical excuse from appellant, and a tape recording made by the agent which substantiated the testimony.

F.2d at 914–16. Any prejudicial effect was due merely to the fact that the evidence was incriminating; the extrinsic act here was not of a "heinous" nature that could incite the jury to an irrational decision, nor was it likely to mislead the jury or confuse the issues. *Beechum*, 582 F.2d at 917. Furthermore, the trial judge gave a cautionary instruction before this evidence was presented.

This is a textbook example of a situation where extrinsic act evidence was properly, admitted under Rule 404(b).

## III. SUFFICIENCY OF EVIDENCE

Appellant argues that the evidence presented at trial failed to prove that she knew of the existence of the conspiracy and voluntarily agreed to join it. She contends that she was brought into the scheme because she is a chronic alcoholic, and that she was manipulated and tricked into signing the APRs and medical bills.

The test for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the government, substantial evidence exists to support the verdict.

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). Issues of credibility, the weight of evidence, and conflict in evidence are, of course, matters for the jury. *See United States v. Johnson*, 713 F.2d 654, 661 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984).

The evidence here, although not overwhelming, was sufficient to permit the jury to conclude that appellant was a voluntary, knowing participant in the conspiracy. The government presented evidence indicating that the active conspirators filled out APRs and medical bills fraudulently alleging treatment for injuries, and then brought them to appellant's office where she could sign them. Appellant did in fact sign these documents, even though she never examined or treated any of these "patients." When appellant was too drunk to sign the forms, the conspirators left the documents and returned to pick them up later, when they were signed. A document analyst testified that when a person signs a document while under influence of alcohol one would expect to see a tremor in the writing, and that there was no such tremor in appellant's signatures on these forms. An insurance claims adjuster telephoned appellant on one occasion to discuss what appeared to him to be an excessive claim submitted by one of the conspirators; appellant apparently acknowledged that she had treated the patient, when in fact she had not. Further, appellant apparently received at least $4000 from the scheme, and at one point she allegedly complained to one of the conspirators that she was not receiving enough money from the scheme. This evidence is sufficient to sustain the conviction.

Having disposed of all meritorious contentions raised by appellant,[2] her convictions are

AFFIRMED.

---

2. Appellant alleges that the district court erred by dismissing a juror who continually was late and slept during the trial. This contention is governed by *United States v. Smith*, 550 F.2d 277 (5th Cir.), *cert. denied,* 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977).

Appellant also alleges error in the court's omitting certain instructions in its charge to the jury. However, the omitted instructions were either unsupported by any factual basis, or adequately covered by other instructions.