UNITED STATES of America, Plaintiff-Appellee,

v.

John L. WALKER, and Joseph Hebert, Defendants-Appellants.

No. 85–3544
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 27, 1986.

David M. Hufft, Gretna, La., for Walker & Hebert.

John P. Volz, U.S. Atty., Daniel Linhardt, Joseph I. Giarusso, Jr., Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before GEE, RANDALL and DAVIS, Circuit Judges.

PER CURIAM:

Defendants appeal from their convictions under 18 U.S.C. §§ 242, 1512 of depriving certain persons of their civil rights. We affirm the convictions.

## I.

James Winkler was driving to his home at approximately eight o'clock on the evening of April 18, 1985. Officer James Walker of the Mississippi River Bridge Police Authority observed Winkler exit the Mississippi River Bridge in New Orleans in excess of the speed limit. As Winkler came down the exit ramp at Camp Street, Walker pulled him over. Both men got out of their cars, and, according to Winkler's testimony, Walker then ordered him to assume a spread eagle position with his hands on the trunk of his own car. Winkler claims, though Walker denies, that the officer then struck him in the back. In any event, the two exchanged words, and Walker taunted Winkler, challenging Winkler to hit him. Winkler complied, striking Walker in the face.

Up until this point, Winkler and Walker were the only two at the scene. Soon an attorney named Eric Person, who was called at trial as a witness by the defense, arrived and observed Walker atop Winkler hitting Winkler on or near the face. Next, a local television news reporter, along with a cameraman, arrived. The two happened to be driving in the vicinity when they saw the scuffle. The news team initially believed that the police officer was in trouble. That turned out not to be the case. The two stopped to observe, and the cameraman, Hubert Vigreaux, started to film the incident. The reporter, Lynn Gansar, continued to watch and used her two-way radio to call for help. Gansar saw Walker on Winkler's back, and she watched him beat Winkler as Vigreaux began filming the action.

Vigreaux's film begins as Walker is tightening the handcuffs on Winkler. At about the same time, Walker's immediate supervisor, the other defendant in this appeal, Sergeant Joseph Hebert, arrived. Vigreaux's tape shows the two police officers rather violently jerking Winkler off the ground by the handcuffs. Then a third officer, Lewis Taylor, arrived, and Winkler asked Taylor for help, explaining that Walker had beaten him. The video tape

captures Taylor's response, which was to the effect that the beating was good for Winkler. It also shows Hebert delivering a quick punch to the back of Winkler's head. Taylor then approached Vigreaux and demanded the video tape. Taylor began to wrest the camera out of Vigreaux's hands and demanded that Vigreaux tell him how to eject the video tape. Vigreaux was eventually knocked to the ground, and while he was lying there, Taylor and a fourth officer, Montrel Surgent, kicked Vigreaux at least twice and demanded that he hand over the video tape.

A short while after the officers took the tape from Vigreaux's camera, another photographer arrived at the scene in response to Gansar's earlier call for help. The second cameraman began the film rolling once again. The second tape shows Vigreaux being led to a police van. Gansar asked Hebert what Vigreaux had done, and Hebert responded that he had interfered with a police officer. Gansar then explained several times that Vigreaux should be treated less violently, as he had problems stemming from a recent automobile accident. Hebert responded that Vigreaux should have thought of that before he got involved. The police took Vigreaux to the central lock-up of the New Orleans Police Department, but they immediately released him and charges were dismissed. At trial, all the witnesses agreed that Vigreaux had not interfered with the police.

A federal grand jury indicted all four officers for depriving persons of their civil rights in violation of 18 U.S.C. §§ 241, 242. Officers Walker and Hebert, the appellants in this case,[1] were convicted of willfully striking and assaulting Winkler. In addition, Hebert was convicted of willfully, unlawfully, and without probable cause arresting Vigreaux, thereby depriving him of his civil rights. Both Walker and Hebert received one-year prison sentences. They appeal, raising two issues. They argue first that there was not sufficient evidence to sustain their convictions. Second, they

claim that the jury misapplied the court's definition of "assault" to the facts established at trial.

## II.

The standard of review we apply in this case is well established.

It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983) (footnote omitted). In applying this standard, we view the evidence in the light most favorable to the government. *United States v. Merritt,* 736 F.2d 223, 231 (5th Cir.1984).

The defendants do not dispute that both Winkler and Vigreaux had the right to be free from the use of excess force, and that Vigreaux had the right to be free from unlawful arrest. Rather, they contend that "[a]ll three government witnesses [Winkler, Vigreaux, and Gansar] provided a different version of what transpired that night and none of their testimony reflected what was shown on the video tape." Defendants' brief at 11. This assertion nearly crosses the boundary between hyperbole and mendacity. Although it is true that the government witnesses disagreed on several minor points of detail, such as when Walker placed the handcuffs on Winkler, they all testified that Walker was on top of Winkler delivering numerous blows to which Winkler was not responding. The witnesses all agreed, and the video tape confirms, that Hebert struck Winkler in the back of the head. The video tape also belies Hebert's insistence that there is no evidence to support the conviction for false arrest. Hebert was the rank-

---

**1.** On January 9, 1986, this court dismissed the appeal of Montrel A. Surgent for want of prosecution. Surgent did not file a brief within the time fixed by the rules.

ing officer at the scene. Gansar testified that Hebert was near Taylor and Vigreaux and could have seen what transpired between them. The jury could well have chosen not to believe Hebert's testimony that he did not know that Vigreaux was being kicked and that he did not hear him scream. Indeed, the sounds of kicking, followed by a cry of pain, are clearly audible on the video tape. Credibility choices are for the jury, *United States v. Trull,* 581 F.2d 551 (5th Cir.1978); *United States v. Villarreal,* 764 F.2d 1048 (5th Cir.1985), and the video tape confirms the jury's credibility choice. In short, there is substantial evidence to support the jury's conclusion that Hebert knew that Vigreaux had not interfered yet nonetheless refused to order his release.

■ The second argument raised on appeal by the defendants is that the jury found Walker guilty of assaulting Winkler solely because Walker told Winkler to "take your best shot." [2] The defendants' argument is based entirely on a note the jury sent to the court. The note read as follows:

> We are having a major problem with the definition of
>> "assault" as is written in the law. "Did willfully strike and assault." Could we have some.... Is a verbal challenge considered assault. EXAMPLE: Officer Walker testified that he said, "take your best shot" to suspect Winkler.

In response to this question, the district court responded as follows: "Any willful attempt or threat to inflict injury upon the person of another, when coupled with an apparent present ability so to do, and any intentional display of force such as would give the victim reason to fear or expect immediate bodily harm, constitutes an assault. An assault may be committed without actually touching, or striking, or doing bodily harm to the person of another." The defendants suggest that the jury found Officer Walker guilty of assault sole-

ly by virtue of his statement "take your best shot."

The defendants, however, do not object to the district court's instruction on assault. Instead, the defendants suggest that the note sent out by the jury is "indic[a]tive of the fact that the jury believed Officer Walker's version of the incident" that he did not use excessive force. How this note leads to such a conclusion is unclear. The indictment charged Walker with assaulting and beating Winkler. There was overwhelming evidence adduced at trial that he did both. The jury's conclusion is amply supported by the record.

### III.

For the foregoing reasons, the judgment is AFFIRMED.

---

**2.** There is some dispute as to what precisely Walker said. It is undisputed that he taunted Winkler, and Walker's version is that he told Winkler to "take your best shot."