[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 9, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-15628
Non-Argument Calendar

_____

D. C. Docket No. 04-00092-CR-ORL-28-KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES RAYBRIGHT MARTIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 9, 2005)

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Defendant-appellant, James Raybright Martin, appeals his conviction by a jury of possession with intent to distribute 5 grams or more of cocaine base and possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and (b)(1)(B). The appeal requires us to consider (1) whether the current standard of review of a motion for judgment of acquittal violates the Sixth Amendment and the Due Process Clause; and (2) whether the jury could reasonably have found that Martin was entrapped. Because we have determined that the standard of review is constitutional and that the government presented sufficient evidence for a reasonable jury to conclude that Martin was predisposed to take part in the crimes, we AFFIRM.

## I. BACKGROUND

A federal grand jury charged Martin in a three-count indictment with knowingly and intentionally possessing with intent to distribute and distributing (1) a quantity of a substance containing a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C);[1] (2) five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii); and (3) 50 grams or more of cocaine base, in violation of 21 U.S.C § 841(a)(1) and (b)(1)(A)(iii).

---

[1] The district court granted the government's subsequent motion to dismiss Count One of this indictment.

At Martin's trial, a Federal Bureau of Investigation (FBI) Special Agent, Edward Thompson, testified that he began investigating Martin in September 2003 by purchasing drugs from him under cover. The investigation was organized through a cooperative drug task force, which included James Carlies of the Orlando Police Department. Carlies had asked a confidential informant, Stevie Ricks, with whom he had worked for about six years, to arrange to buy cocaine from Martin sometime in August 2003. After that, the task force asked Ricks to set up a deal for Thompson. Thompson and Ricks met with Martin on 4 September 2003, at Martin's clothing store, at which time Thompson purchased $2,000 worth of crack cocaine from Martin.

This was the first time Ricks had worked as an informant for the FBI. Thompson testified that he was unaware of Ricks's criminal history and that he had not investigated it because of Ricks's prior experience as an informant. Carlies testified that he was unaware of the extent of Ricks' criminal history. Both Carlies and Thompson testified that they would not have known whether Ricks tried to intimidate or influence Martin into making any of the sales.

Thompson testified that, after the first meeting, he recorded a telephone conversation with Martin in which he told Martin that the cocaine he had purchased earlier had been good and in which Martin replied that anytime

Thompson wanted to make a purchase Thompson could just call Martin a day beforehand. According to Thompson, he and Martin met again at the store on 30 September 2003. On this occasion, Martin took Thompson into the back storage area, showed him a three-gram sample of crack cocaine, and discussed doing a drug deal in the future. In late October, the two spoke over the phone about "doing the fifty deal." R3 at 123. These conversations were recorded and presented as evidence at trial.

Thompson called Martin again on 23 March 2004 and arranged to purchase a quarter kilogram of crack cocaine. The deal was supposed to take place on the following day, but, because of a lack of manpower, Thompson rescheduled it for 26 March. On that day, they met in the parking lot of a Home Depot, but Martin had already sold the cocaine to another buyer. Martin told Thompson that he was going to get some more, and they met later that day at a Burger King where Martin sold Thompson a quantity of crack cocaine. Thompson testified that, during his conversations with Martin, he never sensed that Martin had any hesitancy or second thoughts regarding the drug transactions.

Carlies recorded and monitored the conversations that occurred between Thompson and Martin on 26 March 2004 and interviewed Martin after his arrest. He testified that, in the course of his observation of and discussion with Martin, he

4

never heard Martin express any reservations or hesitancy regarding the drug deal. During the post-arrest interview, Martin told Carlies that he understood why he was being arrested, and he was "being arrested for doing something stupid, for trying to help out a friend." R4 at 203. After Carlies testifed, Martin moved for a judgment of acquittal, asserting that the government had failed to prove a prima facie case against him. The court denied the motion.

Martin then took the stand. Martin testified that he did not have any intention to sell drugs through the store but that Ricks put him "under pressure." R4 at 241. Martin testified that Ricks came to see him eight or nine times a week and that he was concerned that Ricks's life might be in danger. Martin noticed that Ricks had a gun and appeared to be in fear. Martin explained that the drug sale was not his idea but that he agreed to help Ricks by selling some drugs "as a favor for a friend," because he "didn't want to see [Ricks] get hurt." R4 at 242, 247. Martin testified that Ricks actually provided him with the cocaine he ultimately sold to Thompson on 4 September. Martin also testified that he only did another transaction with Thompson after that because he "was in fear of [his] life." Id. at 244.

When asked what kind of pressure Ricks exerted on him to break the law, Martin responded, "He came to me with a story." Id. at 250. Martin also testified

that he had told Thompson, on at least one occasion, that he did not want to sell drugs and that Thompson was lying when he testified to the contrary. Martin testified that he sold 152 grams of crack to Thompson because Thompson "kept calling" him. Id. at 252.

After the defense rested its case, the district court denied Martin's renewed motion for a judgment of acquittal. The parties proceeded to make closing arguments, after which the judge instructed the jury. The jury charge included an instruction regarding the defense of entrapment. The jury deliberated and returned a verdict finding Martin guilty of Counts Two and Three of the indictment.

On appeal, Martin argues that the current standard of review for a denial of a motion for judgment of acquittal violates the Sixth Amendment and due process because it (a) mandates that all inferences be drawn in favor of the government, (b) does not require that the evidence exclude every hypothesis of innocence, and (c) is overruled by the Supreme Court's decision in United States v. Booker.[2] He also argues that his motion for judgment of acquittal should have been granted because he was entrapped as a matter of law.

## II. DISCUSSION

A. Constitutionality of Standard of Review

---

[2]543 U.S. ___, 125 S. Ct. 738 (2005).

We review constitutional issues de novo. See United States v. Wright, 392 F.3d 1269, 1280 (11th Cir. 2004), cert. denied, 125 S. Ct. 1751 (2005). Currently, in our circuit, a district court considering a motion for the entry of judgment of acquittal should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction; it must ascertain whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. United States v. Ward, 197 F.3d 1076, 1079 (11th Cir. 1999). In so doing, the court must "view the evidence in the light most favorable to the government[,] . . . resolve any conflicts in the evidence in favor of the government, . . . and must accept all reasonable inferences that tend to support the government's case." Id. (citations omitted). "It is not necessary for the evidence to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." Id. (citing United States v. Sellers, 871 F.2d 1019, 1021 (11th Cir. 1989) (quoting United States v. Bell, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), aff'd on other grounds, 462 U.S. 356, 103 S. Ct. 2398 (1983))). Finally, "a jury is free to choose among reasonable constructions of the evidence . . . [and t]he court must accept all of the jury's 'reasonable inferences and credibility determinations.'" Id. (citations omitted).

1. Proposed Alternative

Martin first argues that this current standard of review for denial of judgment of acquittal violates his Sixth Amendment right to a jury trial and his right to due process. Martin asserts that we should revert to what he describes as having been our pre-1982 standard of review. Under his proposed standard, no matter how strongly the evidence suggests guilt, a conviction may not be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.

Martin cites Myles v. State, 826 So. 2d 1102, 1103 (Fla. Dist. Ct. App. 2002) for this standard. Even in Florida, however, it is only in circumstantial-evidence cases that a conviction may not be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. Id. Because Thompson has provided direct eyewitness testimony, this is not a circumstantial-evidence case. Further, we have specifically rejected the distinction between direct evidence and circumstantial evidence with respect to the standard of review. Bell, 678 F.2d at 549 n.3 (citing Holland v. United States, 348 U.S. 121, 139-40, 75 S. Ct. 127, 137-38 (1954), which announced that circumstantial evidence is not intrinsically different from testimonial evidence and described the every-reasonable-hypothesis jury instruction as "confusing and incorrect").

Martin has failed either to demonstrate how our current standard of review

violates the Sixth Amendment or due process requirements or to cite any controlling precedent in support of his argument that the standard of review should require every hypothesis of innocence be eliminated as a possibility before a conviction may be sustained, particularly with regard to a case in which direct evidence has been presented.

2. Effect of Booker

Martin also asserts that the Supreme Court's decision in United States v. Booker has rendered our standard of review unconstitutional. He has not, however, explained how it can be read to have done so, particularly given its focus on the Sentencing Guidelines.[3] Accordingly, his argument that Booker overrules our standard of review is unavailing. The standard set out in Ward, relying on Bell, remains controlling law.

B. Entrapment

Martin next argues that he was induced by the government's confidential informant to commit the crimes at issue and was thereby entrapped. Entrapment is an affirmative defense. United States v. Quinn, 123 F.3d 1415, 1423 (11th Cir. 1997).

---

[3]In Booker, the Supreme Court addressed the question of whether the Federal Sentencing Guidelines violated the Sixth Amendment, holding that the mandatory nature of the Federal Sentencing Guidelines rendered them incompatible with the Sixth Amendment's guarantee of the right to a jury trial. 543 U.S. at ___, 125 S. Ct. at 746. Martin has conceded that "there is no meritorious issue to raise on appeal" in relation to his sentencing. Appellant's Br. at 1.

A valid entrapment defense requires two elements: (1) government inducement of the crime, and (2) defendant's lack of predisposition to commit the crime prior to the inducement. Once the defendant has produced evidence of inducement, the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the crime absent the government's role in assisting such commission.

United States v. Francis, 131 F.3d 1452, 1455-56 (11th Cir. 1997) (citations omitted). "Predisposition is a fact intensive inquiry into the defendant's readiness and willingness to engage in the crime absent any contact with the government's officers or agents." Id. at 1456. "Evidence of predisposition may also include the readiness or eagerness of the defendant to deal in the proposed transaction." United States v. Andrews, 765 F.2d 1491, 1499 (11th Cir. 1985). It may also include evidence that the defendant had "opportunities to back out of illegal transactions but failed to do so." United States v. Brown, 43 F.3d 618, 625 (11th Cir. 1995).

Our review of a jury's rejection of an entrapment defense is de novo, but is "limited to determining whether the government presented sufficient evidence for a reasonable jury to conclude that the defendant was predisposed to take part in the crime." Francis, 131 F.3d at 1456. Further, "we view all evidence and make all inferences in favor of the government[, and] . . . we cannot overturn the jury's verdict if any reasonable construction of the evidence would allow the jury to find the defendant guilty beyond a reasonable doubt." Id. Finally, we have stated that, when a defendant takes the stand, "the jury may make adverse determinations

10

about his credibility and reject his explanation as a complete fabrication." United States v. Vazquez, 53 F.3d 1216, 1225 (11th Cir. 1995) (citations omitted).

In this case, the government has presented sufficient evidence for a reasonable jury to conclude that Martin was predisposed to take part in the crime. The trial testimony of the government's witnesses established that Martin participated in several drug transactions. The government's witnesses testified that Martin showed no hesitancy about engaging in these transactions. Further, the jury, after listening to Martin's testimony and receiving a jury instruction regarding entrapment, was entitled to disbelieve Martin's entrapment defense and to find him guilty. Thus, there is a reasonable construction of the evidence that would allow a jury to find the defendant guilty beyond a reasonable doubt.

### III. CONCLUSION

Martin challenges his conviction on the grounds that the current standard of review for a motion for judgment of acquittal violates the Sixth Amendment and the Due Process Clause and that he was entrapped. This standard of review is established law in our circuit and we see no way in which it violates either the Sixth Amendment or the Due Process Clause. The government presented sufficient evidence of Martin's predisposition to commit the crimes of which he has been convicted for a jury to conclude he was not entrapped. Accordingly, we **AFFIRM** Martin's conviction.