# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 2, 2009

Charles R. Fulbruge III
Clerk

No. 09-50088

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BRYAN MENDOZA,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
USDC No. 5:07-CR-558-3

Before CLEMENT, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Bryan Mendoza was convicted of conspiracy to distribute and possess with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846, and of attempt to possess with intent to distribute more than 500 grams of cocaine, also in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. For the reasons set forth below, we affirm.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## I. FACTUAL BACKGROUND

On September 3, 2007, state troopers stopped a car driven by the appellant's co-defendant Jose Hinojosa near Devine, Texas. After Hinojosa consented to a search of the vehicle, the officers discovered two individually wrapped bundles containing a total of 989 grams of cocaine. The officers also discovered three mobile phones in the car. Following his arrest, Hinojosa agreed to cooperate with the investigation. He told the officers that he was paid to drive the cocaine from Mexico into the United States and planned to deliver it to the appellant at a Denny's restaurant in San Antonio. At trial, Hinojosa stated that he had delivered cocaine to the appellant at a San Antonio Wal-Mart one week earlier.

While in custody, Hinojosa provided details about the three mobile phones found in his car. The first phone was Hinojosa's personal phone. The second was an inoperable phone that had been given to Hinojosa by his Mexican drug source with instructions to return it to the appellant. The third phone was also given to Hinojosa by his drug source, with instructions to use it to contact the appellant to arrange the delivery of the cocaine. Over the next several hours following Hinojosa's arrest, the third phone rang repeatedly and displayed the number "(210) 404-5358" along with the name "Bryan" on the caller ID screen.

Shortly after 4 p.m., police instructed Hinojosa to place a recorded call to the appellant. After the first attempt failed, Hinojosa attempted to contact the appellant at an alternative number, but only received a voicemail greeting. Hinojosa again tried to reach him at the primary number ((210) 404-5358) and was successful. During the course of the recorded conversation, Hinojosa provided a false story that he had been delayed by rain. The appellant replied "Yes, but, well, yeah. Right now, I wasn't expecting you this late." The appellant also inquired if anything "bad" had happened and wanted to know why Hinojosa had not returned his calls. The appellant then indicated that he was "far away"

from the drop-off point, but that he would "see what was going on" and call Hinojosa.

The officers then drove Hinojosa and his car to the Denny's with two packages containing sheet rock that were made to look like the bundles of cocaine. Hinojosa testified that the appellant called his phone and told him that he would not be able to meet him, but that he would be sending his cousin instead. According to Hinojosa's testimony, the appellant informed him that he would recognize the individual by his tattoos.

At 5:40 p.m., a tattooed man, co-defendant Samson Cady, arrived in the Denny's parking lot with his wife Angelica. Hinojosa testified that Cady climbed into his car, told him that he was "Bryan's cousin," and retrieved the two bundles from him. After Cady exited the vehicle, he was arrested. The arresting officers observed that Cady was transporting the two bundles of sheet rock under his shirt. A review of Cady's mobile phone directory revealed calls to and from the appellant as well as several missed calls from the appellant, including four made after Cady's arrest.

Officers subpoenaed the phone records for the mobile phones involved in the investigation. The records revealed that the appellant was the subscriber for "Bryan's" two mobile numbers: (210) 404-5358 and (210) 797-6637. The appellant was also the subscriber for a third phone used to contact Cady and Hinojosa on September 3: (210) 317-1581. The phone records confirmed that multiple calls were placed between Hinojosa's mobile phone and the appellant's phones on September 3, including the time period following Hinojosa's arrest and the time period during which Hinojosa sat inside his car at Denny's. They also confirmed multiple calls between the appellant and Cady on the afternoon of September 3, following Hinojosa's conversation with the appellant.

## II. PROCEEDINGS BELOW

On September 19, 2007, a grand jury charged the appellant with one count of conspiracy to distribute and possess with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846, and one count of attempt to possess with intent to distribute more than 500 grams of cocaine, also in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. The government introduced the subpoenaed phone records and Hinojosa's testimony as evidence of the appellant's participation in the conspiracy.

Hinojosa's testimony at trial was somewhat inconsistent with the statements that he had made to the officers while in custody following his arrest. It also conflicted with certain information contained in the phone records. At the close of the Government's case and again after the defense rested, counsel for the appellant moved for a judgement of acquittal based on the insufficiency of the evidence. The district court denied both of these motions. The jury convicted the appellant on both counts. The district court sentenced him to two concurrent terms of sixty months in prison.[1]

## III. STANDARD OF REVIEW

When reviewing the record to determine whether there is sufficient evidence to support a conviction, we will uphold the conviction if "a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Klein*, 543 F.3d 206, 212 (5th Cir. 2008) (internal quotation marks and citation omitted), *cert denied*, 129 S. Ct. 1384 (2009). "All reasonable inferences are drawn in the

---

[1] The judgment refers to the second count as one for "conspiracy to attempt to possess with intent to distribute" in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. However, the indictment actually charged that the appellant "did unlawfully, knowingly and intentionally attempt to possess with intent to distribute" in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. Because no party has raised this issue on appeal and we find that the clerical error was harmless, we disregard it. Fed. R. Crim. P. 52(a).

light most favorable to the prosecution." *United States v. Moody*, 564 F.3d 754, 758, *cert denied*, 129 S. Ct. 2756 (2009). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence . . . . A jury is free to choose among reasonable constructions of the evidence." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc) (footnote omitted), *aff'd*, 462 U.S. 356 (1983).

## IV. DISCUSSION

The appellant first argues that the evidence was insufficient as a matter of law to support his conviction for conspiracy to traffic more than 500 grams of cocaine. To establish the conspiracy in this case, the government must prove the following elements beyond a reasonable doubt: (1) an agreement with one other person to distribute or possess with intent to distribute more than 500 grams of cocaine; (2) the appellant's knowledge of the agreement; and (3) the appellant's voluntary participation in the conspiracy. *See United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008) *cert. denied*, 129 S. Ct. 2067 (2009). Knowledge and voluntary participation in a conspiracy "may be inferred from a collection of circumstances." *United States v. Fuchs*, 467 F.3d 889, 908 (5th Cir. 2006) (internal quotation marks and citations omitted).

The appellant asserts that Hinojosa's inconsistent statements rendered his testimony incapable of supporting the verdict. As the district judge correctly observed, however, issues of witness credibility are the province of the jury. This court will not "declare testimony incredible as a matter of law unless it is so unbelievable on its face that it defies physical laws." *United States v. Gardea Carrasco*, 830 F.2d 41, 44 (5th Cir. 1987) (internal quotation marks and footnote omitted). It is true that Hinojosa made several inconsistent statements during the course of his testimony; the prosecutor acknowledged as much in his closing remarks to the jury. We cannot say, however, that no rational trier of fact could

choose to believe Hinojosa's testimony that he was paid to deliver the cocaine to the appellant on September 3.

Moreover, other evidence corroborated Hinojosa's testimony. The phone records show a number of calls connecting Hinojosa to the appellant and Cady, who ultimately picked up the cocaine. The appellant argues that, at best, these records demonstrate association with an admitted drug dealer. He maintains that the records could just as easily support the defense's theory that the appellant was meeting with Hinojosa for the benign purpose of retrieving a broken phone. It is true that mere association with individuals engaged in criminal activity, without more, is insufficient to support a conviction for conspiracy. *See United States v. Williams-Hendricks*, 805 F.2d 496, 503 (5th Cir. 1986); *see also United States v. Espinoza-Seanez*, 862 F.2d 526, 537-39 (5th Cir. 1988). In this case, however, the appellant's argument misses the mark. The jury was entitled to view the phone records alongside Hinojosa's testimony. It was free "to choose among [the] reasonable constructions of the evidence" and conclude that Hinojosa's testimony and the phone records, when viewed together, established the appellant's participation in the conspiracy beyond a reasonable doubt. *Bell*, 678 F.2d at 549. There was sufficient evidence for the jury to convict the appellant of conspiracy.

The appellant also challenges the sufficiency of the evidence supporting his conviction for attempting to possess with intent to distribute more than 500 grams of cocaine. To establish an attempt to possess with intent to distribute in this case, the government must prove that (1) the appellant acted with the kind of culpability required for the crime of possession with intent to distribute and (2) the appellant engaged in conduct constituting a substantial step toward commission of the crime. *See United States v. Redd*, 355 F.3d 866, 872-73 (5th Cir. 2003). Possession with intent to distribute requires that the government prove "(1) knowing (2) possession of the illicit substance (3) with intent to

distribute it." *United States v. Martinez-Mercado*, 888 F.2d 1484, 1491 (5th Cir. 1989) (citations omitted). It is well-established that each member of a conspiracy may be held liable for the substantive offenses committed by his co-conspirators in furtherance of the conspiracy during his membership in the conspiracy. *See, e.g., United States v. Becker*, 569 F.2d 951, 958 (5th Cir. 1978) (citing *Pinkerton v. United States*, 328 U.S. 640 (1946)).

In this case, the evidence was sufficient to support the appellant's conviction for attempted possession with intent to distribute. The jury found that the appellant knowingly participated in a conspiracy to possess and distribute the cocaine. Having reached this conclusion, the jury could find that the appellant attempted to possess the cocaine through the actions of his co-conspirator, Cady.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.