73 F.3d 371
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Mohammed Idrees KUSSAIR, Defendant-Appellant.
 No. 95-10100.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 14, 1995.*
Decided Dec. 22, 1995.
 
 Before: CHOY, WIGGINS, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Mohammed I. Kussair was convicted of committing bank larceny in violation of 18 U.S.C. Sec. 2113(b) for withdrawing $900,000 that had been erroneously deposited into his savings account due to an encoding error by bank personnel. Kussair contends on appeal that the district court misconstrued Sec. 2113(b) in holding that he "took" the erroneously deposited funds when he withdrew them, rather than when the funds were first deposited into his account or when he first learned the funds were in his account. In addition, he claims there is insufficient evidence of his intent to steal to support his conviction and challenges the district court's exercise of jurisdiction under Sec. 2113(b).
 
 
 3
 We have jurisdiction under 18 U.S.C. Sec. 1291 and, for the following reasons, we affirm the district court's conviction.
 
 FACTS
 
 4
 On February 9, 1993, Kussair deposited an insurance settlement check for $100,000 into his savings account at the Bank of Stockton. At the time, Kussair's account had a balance of approximately $750. The same day, the Bank erroneously encoded the check as a deposit of $1,000,000 and then deposited that amount in Kussair's account. Kussair had nothing to do with the encoding error.
 
 
 5
 Kussair did not make any further deposits to his savings account after the encoding error occurred. Over the next several weeks, Kussair withdrew the funds, using the proceeds to pay off various loans, to transfer funds to his local Citibank account, and to transfer $400,000 to his Bank of America account in Pakistan.
 
 
 6
 Despite Kussair's knowledge that he had not deposited $1 million into his savings account, Kussair testified that he believed the erroneously deposited money was his. Kussair testified that upon noticing his balance had "too many zeros," he inquired at the Bank concerning the origin of the funds; the teller told him the $1 million had been electronically deposited. Kussair testified that he therefore believed the $1 million had been wire transferred to him by his wife's relative in Pakistan, Shazadah Asadurrehman.
 
 
 7
 Both Kussair and Asadurrehman testified that they had previously discussed the possibility of Asadurrehman sending Kussair a large sum of money in order to aid Asadurrehman in obtaining an immigration visa or in purchasing a home. Michael Schoenleber, an immigration attorney, also testified that in 1992 he had given Asadurrehman and Kussair advice concerning how Asadurrehman could obtain a "gold card visa" by investing a minimum of $1 million in a business in the United States.[1]
 
 
 8
 On arriving in Pakistan, Kussair was informed that the police had been to his house, asking about the $1 million dollars. Kussair withdrew the remaining $400,000 from his account in Pakistan and was evasive when answering questions concerning the whereabouts of these funds.
 
 STANDARDS OF REVIEW
 
 9
 We review questions of law de novo. Anderson v. U.S., 966 F.2d 487, 489 (9th Cir.1992). In addition, we review the sufficiency of the evidence to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Finally, we review the district court's assumption of jurisdiction de novo. U.S. v. Peralta, 941 F.2d 1003, 1010 (9th Cir.1991), cert. denied, 503 U.S. 940 (1992).
 
 DISCUSSION
 
 10
 I. THE DISTRICT COURT DID NOT ERR IN HOLDING THAT UNDER 18 U.S.C. Sec. 2113(B) KUSSAIR TOOK THE $900,000 FROM THE BANK WHEN HE WITHDREW THE FUNDS.
 
 
 11
 Kussair contends that the district court erred in holding that under Sec. 2113(b) Kussair took delivery of the funds when he made the successive withdrawals. Kussair argues that, according to cases interpreting common law larceny, he "took" the funds when the funds were erroneously deposited into the account, or, in the alternative, when he first learned that the funds were in the account. Thus, he claims that he did not have the requisite coincidence of "intent to steal" and taking the funds.
 
 
 12
 We are persuaded, however, that under Sec. 2113(b) Kussair took the funds when he began to withdraw them, because, until that time, the funds were in the Bank's possession. First, section 2113(b) provides in part:
 
 
 13
 Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management or possession of any bank ... shall be fined not more than $5,000 or imprisoned not more than ten years, or both....
 
 
 14
 18 U.S.C. Sec. 2113(b) (emphasis supplied). The language of the statute thus broadly prohibits taking money or property "belonging to, or in the care, custody, control, management or possession of any bank." Id.; see also U.S. v. Morgan, 805 F.2d 1372, 1376 (9th Cir.1986), cert. denied, 480 U.S. 949 (1987) (under Sec. 2113(b) the crime is complete whether the property belongs to the bank or it is simply in the care, custody, control, management, or possession of such institution). Kussair does not dispute that until he withdrew the funds the bank still maintained custody, control and management of the funds. Therefore, under the circumstances of the instant case, the statute is more naturally interpreted as prohibiting a withdrawal of funds from Kussair's account, whether or not Kussair had access to the funds prior to the withdrawal.
 
 
 15
 Moreover, contrary to Kussair's argument, the definition of "takes" under Sec. 2113(b) need not be derived exclusively from the common law larceny cases. Section 2113(b) prohibits both common law larceny and other felonious takings (such as obtaining money by false pretenses), provided there is a taking and carrying away. Bell v. U.S., 462 U.S. 356, 360-61 (1983); U.S. v. Registe, 766 F.2d 408, 410 (9th Cir.1985). In the false pretense cases under Sec. 2113(b), courts have assumed without discussion that the withdrawal of funds by false pretenses constitutes the "taking" under Sec. 2113(b).[2] In addition, courts have upheld convictions under Sec. 2113(b) in factual situations almost identical to the case at bar. See Thaggard v. U.S., 354 F.2d 735 (5th Cir.1965), cert. denied, 86 S.Ct. 1222 (1966) (bank customer withdrew $43,000 that had been erroneously credited to his account); U.S. v. Posner, 408 F.Supp. 1145 (D.Md.1976) aff'd 551 F.2d 310 (4th Cir.), cert. denied, 98 S.Ct. 127 (1977) (bank customer withdrew $180,000 erroneously deposited into his account). Kussair provides no basis for distinguishing these cases from the case before us.
 
 
 16
 Finally, even under the common law definition of a larcenous "taking," we find that the "taking" occurred when Kussair withdrew the funds from the account, not when the funds were deposited into his account. A taking requires that the defendant secure dominion over the property. Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law, (1986) vol. 2, pp. 345-46. As pointed out by the government, a deposit is a loan by the depositor to the bank; when funds are deposited, title to those funds passes to the bank. See Crocker-Citizens Nat. Bank v. Control Metals Corp., 566 F.2d 631, 637 (9th Cir.1977). As long as the bank has title to and possession of the funds, Kussair had not secured dominion over the funds. Cf. Morgan, 805 F.2d at 1376-77 (defendant exercised dominion over funds where, through false impersonation of depositor, he caused an employee to wire funds to a fraudulent account).[3]
 
 
 17
 For the above reasons, we hold that under Sec. 2113(b) Kussair took the funds when he withdrew the funds from his account.
 
 
 18
 II. THE DISTRICT COURT DID NOT ERR IN FINDING THAT KUSSAIR'S "TAKING" OF THE FUNDS WAS TRESPASSORY.
 
 
 19
 Kussair also argues that the "taking" was not trespassory because the bank consented to the deposit of the funds in his account. We reject this argument.
 
 
 20
 To begin, the taking need not be trespassory as defined by the common law in order to be a prohibited taking under Sec. 2113(b). Bell, 462 U.S. at 360-61; Registe, 766 F.2d at 410 (9th Cir.1985).[4] In addition, because we hold that the taking occurred when the funds were withdrawn, at common law the taking was trespassory--the mistake of the transferor renders the transfer of title ineffective. See U.S. v. Rogers, 289 F.2d 433, 437-38 (4th Cir.1961); LaFave & Scott, supra, p. 343.[5]
 
 
 21
 III. THERE WAS SUFFICIENT EVIDENCE FOR THE DISTRICT COURT TO FIND THAT KUSSAIR POSSESSED THE REQUISITE INTENT TO STEAL THE FUNDS WHEN HE WITHDREW THE FUNDS FROM HIS ACCOUNT.
 
 
 22
 Kussair contends that, looking at the evidence in the light most favorable to the government, there was insufficient evidence to find beyond a reasonable doubt that Kussair possessed the intent to steal the funds at the various times he withdrew the funds. Kussair argues that the inquiries he made at the Bank regarding the origin of the funds as well as the passage of time before he began to make the withdrawals (7 days) shows that he had no intent to steal the money, but rather was attempting to verify that the money was his and could be withdrawn. Kussair also argues that the testimony of Asadurrehman and Schoenleber regarding Asadurrehman's intent to invest $1 million in a business in the U.S. in order to obtain a visa creates a reasonable doubt because it demonstrates that Kussair had a reasonable belief that the $1 million was wired to him from Asadurrehman.
 
 
 23
 We, however, find ample evidence to support the district court's verdict regarding Kussair's intent to steal. First, the trier of fact may rely on circumstantial evidence, such as the fact that Kussair knew his bank balance before and after he made the $100,000 deposit, the fact that he withdrew the funds within several weeks of the erroneous deposit and the fact that he transferred almost half of the money to Pakistan, to infer his intent to steal. See U.S. v. Stauffer, 922 F.2d 508, 515 (9th Cir.1990) (under the circumstances, defendant's implausible testimony provides a basis for concluding the opposite is true).
 
 
 24
 Moreover, Kussair's actions after he was officially notified of the bank error--the withdrawal of the funds from his account in Pakistan and his refusal to aid in returning the funds--can be used to infer his prior intent to steal. See U.S. v. Gibson, 625 F.2d 887, 888 (9th Cir.1980) (subsequent conduct of defendant can throw light upon defendant's motive and intent in kidnapping prosecution).
 
 
 25
 Finally, the testimony of Asadurrehman, Schoenleber and Kussair did not as matter of law establish a reasonable doubt as to Kussair's intent to steal. Kussair's own testimony contained numerous discrepancies. To cite one example, he testified he believed the money had come from Asadurrehman so that Asadurrehman could obtain a visa by investing money in the U.S. However, Kussair used the money to pay off his own loans and to send the money to his own account in Pakistan. Given such discrepancies, the court could disregard Kussair's explanation regarding his belief that Asadurrehman sent him the money. See Stauffer, 922 F.2d at 575.
 
 
 26
 Therefore, we find there was sufficient evidence of Kussair's intent to steal to support the trial court's verdict.
 
 
 27
 IV. THE DISTRICT COURT DID NOT ERR IN EXERCISING JURISDICTION OVER THIS CASE.
 
 
 28
 Kussair also contends that the district court did not have jurisdiction over this case for two reasons: (1) he did not unlawfully take money from a federally insured bank as prohibited by Sec. 2113(b) and (2) the erroneously deposited funds that were subsequently withdrawn were not themselves federally insured. Neither of these arguments has merit.
 
 
 29
 First, Kussair's claim that he lawfully withdrew the money simply repeats the arguments we reject above regarding when the taking occurred, whether it was trespassory, and whether there was sufficient evidence of his intent to steal.
 
 
 30
 Second, the fact that the FDIC only insures up to $100,000 in any bank account does not affect the jurisdictional analysis under Sec. 2113(b). Section 2113(b) makes it a crime to take "any property or money or any thing of value exceeding $100 belonging to, or in the care, custody, control, management or possession of any bank." 18 U.S.C. Sec. 2113(b). There is no requirement that the money, property or thing of value be specifically insured by the FDIC. Rather, the statute defines a bank for the purposes of the above section to include "any institution the deposits of which are insured by the Federal Deposit Insurance Corporation." 18 U.S.C. Sec. 2113(f) (emphasis supplied). Thus, in order to commit a violation of Sec. 2113(b), Kussair need only have taken money or property from a bank that has its deposits insured by the FDIC--he need not actually have taken deposits that are federally insured.
 
 
 31
 For these reasons, we reject Kussair's jurisdictional arguments.
 
 CONCLUSION
 
 32
 For the foregoing reasons, we AFFIRM Kussair's conviction under 18 U.S.C. Sec. 2113(b).
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Kussair testified he attempted to reach Asadurrehman by phone over the next week in order to confirm that Asadurrehman had in fact wired the $1 million, but was unsuccessful. Kussair also testified that he thought the money may have been sent by an Arab man that he had known for several hours and whose name he could not remember
 
 
 [2]
 See Bell, 462 U.S. at 360 (crime of false pretenses occurred when teller handed Bell the money, not when Bell deposited stolen check several weeks before); U.S. v. Hinton, 703 F.2d 672, 677 (2d Cir.1983), cert. denied, 103 S.Ct. 3091 (1983) ("takes and carries away with intent to steal or purloin" encompasses unlawful withdrawal of funds based on deposit of stolen check); U.S. v. Khamis, 674 F.2d 390, 393-94 (5th Cir.1982) (deposit of worthless check and withdrawal and use of the funds constituted a taking of the funds with intent to steal under Sec. 2113(b))
 
 
 [3]
 Kussair offers no authority for his assertion that "reasonably unrestricted access" to the funds equates with a "taking." For example, Kussair relies on several common law larceny cases in which a person is erroneously overpaid (such as given too much money when cashing a check), but fails to realize the overpayment until some later time. Kussair argues that at common law, this person did not commit larceny because the taking occurred when he or she first received the erroneous payment. See LaFave & Scott, supra, p. 343, fn. 55 and cases cited therein. However, these cases do not alter the analysis discussed above. There was no question in the cases relied upon by Kussair that the person who received the overpayment had "taken" physical possession of the money, even though unwittingly
 
 
 [4]
 Kussair neglects to cite Bell or Registe
 
 
 [5]
 A trespassory taking requires the invasion into another's right to possession of property. See Rogers, 289 F.2d at 437-38. However, at common law, an owner's consent to transfer possession or title to property did not always render a taking non-trespassory. Where a transferor mistakenly delivers property to someone, who then realizes the mistake and accepts the property, courts have found that the transferor's consent to transfer of title is ineffective due to the mistake, and the "taking" is trespassory. See id.; LaFave & Scott, supra, p. 343. If, however, the person who receives the property does not realize the amount or nature of the property and only later discovers the mistake, there is a split of authority as to whether the later discovery and conversion of the property is trespassory. LaFave & Scott, supra, p. 343. This latter rule would only apply to the case at bar if we held that the taking occurred when the funds were deposited