UNITED STATES of America,
Plaintiff–Appellee,

v.

Gambize SCHARDAR,
Defendant–Appellant.

No. 86–5872
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Aug. 1, 1988.

Ted Sakowitz, Federal Public Defender, Richard C. Klugh, Jr., Asst. Fed. Public Defender, Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Norman A. Moscowitz, Linda Collins Hertz, Sonia Escobio O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before KRAVITCH, JOHNSON and EDMONDSON, Circuit Judges.

EDMONDSON, Circuit Judge:

Defendant-appellant Gambize Schardar appeals his criminal convictions on wire fraud, making and uttering false bills of lading, and interstate transportation of property taken by fraud. He asserts that divers errors occurred at his trial. We affirm his convictions.

The transactions giving rise to Schardar's criminal convictions involving wire fraud and false bills of lading were similar. Schardar, a commodities broker and exporter working out of Miami, would arrange to export a commodity to a purchaser abroad. As is usual in such foreign sales transactions, payment was arranged under a letter of credit. Once the arrangements were finalized, Schardar then would present false invoices and bills of lading to the bank involved, thereby receiving payment under the letter of credit for goods that were never shipped.

The criminal conduct for which Schardar was convicted arose out of five separate transactions with four different parties. In 1979, Schardar agreed to sell 860 truck tires to the Kashfia family in Iran for approximately $240,000. Although Schar-

dar presented documents to the bank showing that the ordered goods had been shipped and thereby collected his payment, in reality the shipment did not conform to the agreement: 140 truck tires were sent, along with another 1240 radial car tires that the Kashfias had not ordered. The Kashfias agreed to pay for and keep the car tires, and Schardar agreed to ship the missing 720 truck tires.

The second transaction also involved the Kashfia family. While the Kashfias were still expecting the missing tires, they agreed to purchase an additional 300 truck tires and 50 tons of bronze tubing. Schardar presented documentation to the bank obliged to pay the letter of credit and received over $220,000. This documentation, as well as the documents sent to the Kashfias regarding the missing tires, were all fraudulent, mentioning non-existent ships and shipping companies.

In 1983, in the third transaction at issue, Schardar arranged to sell eggs to the Al–Harbi Trading Co. for $110,000. Once again Schardar presented shipping documents to the bank to collect his payment. The company Schardar listed as supplier was non-existent, as was the freighter on which the eggs were allegedly shipped. There was also no freight forwarder in New York City going by the name of the individual listed in Schardar's documents; the alleged address of this individual was also non-existent.

In autumn 1983 the fourth criminal transaction occurred. Schardar arranged to sell 10,000 cases of apples to Gulf Foodstuffs in Qatar. Schardar collected $160,000 from the paying bank through the presentation of false invoices and other documents; apparently no apples were ever shipped.

The fifth fraudulent transaction, which occurred in the United States, is somewhat different. Schardar arranged to purchase

Persian carpets from New York merchant Korhani. When a trucker arrived to transport the carpets from New York to Miami, Korhani was disturbed that Schardar, in completing the shipping documents, listed himself, Schardar, as both shipper and receiver. When Korhani refused to accept a check drawn on a Panamanian bank, Schardar wrote Korhani a check on a Florida bank post-dated for the following day. Korhani took the check to his bank the next day and discovered that the account on which the check was drawn had been closed over a month earlier. Although he then experienced some difficulty in retrieving his merchandise from the carrier because it was Schardar's name that appeared on the transportation documents as shipper, Korhani did succeed in getting his rugs back.

In August 1984 appellant Schardar was indicted on nine counts of wire fraud, three counts of making false bills of lading, three counts of uttering such false bills, and one count of interstate transportation of fraudulently obtained property. After a two-week trial in March and April 1986, the district court dismissed five of the counts charged against appellant. The jury found Schardar guilty on the remaining eleven counts. Schardar was then sentenced to a total of twenty-five years in prison; a stand-committed fine in the amount of $20,000 was also imposed.

[1] Schardar alleges that the district court improperly denied his motions for continuance. We review such a claim by determining whether the district court abused its discretion in denying a continuance. *See United States v. Garmany,* 762 F.2d 929, 935–37 (11th Cir.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 811, 88 L.Ed. 2d 785 (1986).

■ The record indicates that several continuances were granted because defense counsel was involved in other trials.[1]

---

**1.** We set out the chronology of events in order to illustrate the leeway accorded defense and his counsel. On September 11, 1985 counsel Ken Lange (who had represented Schardar during the grand jury proceedings in 1984) entered notices of appearance and of substitution of counsel and reentered the case. On September 27, 1985 the district court granted a defense request for continuance until the December 1985 trial calendar. On October 31, 1985 Lange moved for further continuance, stating that while he was "ready for trial," he had two

The record also indicates that defense trial counsel Ken Lange had represented defendant Schardar during the grand jury investigation and had officially entered the case as counsel about six months prior to the trial. Inasmuch as appellant Schardar's claim of improper denial of continuance implicates a claim of ineffective assistance of counsel due to lack of adequate preparation, we note that the record further indicates that the district court was on the alert for problems that might arise regarding defense counsel's preparation. The district court observed early on in the trial that counsel Lange's opening statement and cross-examination of the first government witness indicated that Lange was prepared and was proceeding competently in the case. The district court also commented on several later occasions that counsel Lange's performance indicated a good grasp of the facts of the case and that Lange was giving an able in-court performance. In light of all these facts, we cannot say that the district court abused its discretion in denying Schardar's request for a continuance.[2]

■ Appellant Schardar also challenges the sufficiency of the evidence on nine of the counts of which he stands convicted. In reviewing this claim, we view the evidence and the inferences to be drawn from it in the light most favorable to the government. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en*

---

scheduling problems causing a conflict with a December trial date in the Schardar case; Lange suggested a late January 1986 date. When the government responded that its counsel was unable to try Schardar's case in February, Lange stated a preference for an early January date but also requested continuance until early March 1986. The district court denied such motions and set the trial date for December 2, 1985. At this point, however, the case was transferred to another district judge and rescheduled for the January 21, 1986 trial period.

Scheduling problems continued. In mid-January 1986 both the government and the defense requested continuances, the government because it was in the middle of a lengthy trial expected to continue until late January, defense counsel because he was involved in several trials during this period. The district court granted the continuance motions, scheduling Schardar's trial for March 25, 1986. In February 1986 defense counsel moved twice to continue the trial until April 7; the request was denied.

In mid-March the government requested that the trial date be finalized in order to complete arrangements for the appearance of out-of-state and foreign witnesses. Defense counsel, however, again moved for a continuance, stating that his preparation for a murder trial in March had not allowed him to prepare for Schardar's trial or to schedule four foreign witnesses to appear on defendant Schardar's behalf. The district court denied Schardar's motion on March 18, 1986, stating that trial would begin on March 25.

On March 25, 1986 defense counsel again moved for a continuance, stating that he was "drained" from having just completed another trial, that religious holidays prevented him from beginning trial, that he needed time to arrange for copying of documents, and that the government was guilty of late discovery. The district court then postponed the start of the trial and jury selection until the next day, Wednesday, March 26, 1986. After jury selection was completed on March 26, the court initially continued the trial until April 7, 1986 to give the defense additional time. On March 27, 1986, however, after determining that counsel Lange's previous trial had gone to the jury on March 24, 1986, the court reset trial in Schardar's case for Monday, March 31, 1986. When defense counsel requested a continuance on March 31, 1986, the district court specifically noted that defense counsel Lange's other case had gone to the jury on March 24; the March 31 trial date in Schardar's case thus gave defense counsel Lange a full week to concentrate solely on defendant Schardar's case.

Appellant Schardar's trial did begin on March 31, 1986.

2. On appeal Schardar challenges specifically the denial of continuances; the issue of ineffective assistance of counsel enters the discussion only as it relates to the problem of continuances. Accordingly and in line with the view that ineffectiveness claims are to be raised in collateral proceedings rather than on direct review, we make no ruling as to the effectiveness of defense counsel. We merely note that the record indicates no egregious problems in defense counsel's conduct of the case, such that the district court should have exercised its discretion to grant a continuance.

*banc*), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

Appellant urges that the government's evidence fails because the government did not call representatives of Al Harbi Trading Co. or Gulf Foodstuffs, Qatar, the victims, to testify regarding the fraudulent egg and apple transactions. Evidence introduced did prove, however, that the documents that Schardar presented to the banks were fraudulent. As regards the transaction with Al Habri, Schardar's named egg supplier was non-existent, as were the freight forwarder and the ship supposedly carrying the egg cargo. The government also produced a witness to whom Schardar had admitted that he had never shipped the eggs. As regards the deal with Gulf Foodstuffs, it was shown at trial that Schardar's named fruit packer did not exist, that the name and address of the freight forwarder were concocted, that the ships and shipping lines named on the bills of lading were non-existent, and that no apples were shipped from San Diego during the pertinent period.

"A wire fraud offense under section 1343 requires proof of two essential elements: (1) a scheme to defraud; (2) use of, or causing the use of, wire communications in furtherance of the scheme." *United States v. Herron,* 825 F.2d 50, 53–54 (5th Cir.1987). By its evidence, the government proved the elements of this offense. There was no need for the testimony of the victims.

■ Appellant also contends that the district court should have granted an acquittal on count 1 of the indictment that alleged a general scheme of fraud involving the various individual transactions. Schardar argues that the district court improperly allowed the jury to consider dismissed counts 5 through 9 with relation to count 1, thereby vitiating his conviction on count 1.

Counts 5 through 9 involved instances of wire fraud related to the apple transaction. At trial the defense objected to the admission of a video deposition of the only government witness able to authenticate the telexes related to counts 5 through 9.[3] The district court reluctantly sustained the defense's objection and dismissed counts 5–9. The fraudulent apple transaction was still at issue with regards to several counts involving fraudulent bills of lading. Because the subject matter of count 1 was thus still relevant to other charges under trial, the district court did not act improperly in refusing to grant an acquittal on count 1.

■ Appellant also alleges that the government presented insufficient evidence to convict him under 18 U.S.C. sec. 2314 regarding the interstate transportation of the oriental rugs fraudulently obtained from Korhani. Because Korhani reclaimed the rugs before they crossed a state line, Schardar claims that no loss occurred and that the goods did not move in interstate commerce.

Courts that have examined the jurisdictional requirements of 18 U.S.C. sec. 2314 (concerning the transportation of stolen or fraudulently obtained goods) and of section 2315 (concerning the sale or receipt of such goods) have adopted a flexible approach emphasizing practicality. Goods have been adjudged to have moved in interstate or foreign commerce when they are in the course of such a crossing, even when they have not yet crossed the technical boundaries. *See United States v. Ajlouny,* 629 F.2d 830, 837 (2d Cir.1980) ("A shipment is sufficiently 'in foreign commerce' for purposes of section 2314 once property bound for a foreign destination arrives in a customs areas."); *United States v. Ranzoni,* 732 F.2d 555 (6th Cir.1984) (theft of liquor met jurisdictional requirements of section 2315 violation because liquor was stolen

---

**3.** A foreign national made the trip to Florida in order to testify for the government at the trial set to begin on March 25, 1986. When trial was postponed, the prosecution and the defense agreed to a video deposition. The deposition began several hours before the witness was scheduled to return to Europe. Although the defense spent some two hours in cross-examination of the witness, at trial the defense objected to admission of the deposition, asserting that the cross-examination time had been inadequate. The district court sustained the objection, noting that eleven other counts remained in the indictment and trial of defendant.

while being conveyed by interstate carriers on their way from Michigan to Pennsylvania, even though liquor had not yet left Michigan).

In this case, Korhani's rugs had already been consigned to the interstate carrier, although they had not yet left New York on their journey to Miami when Korhani managed to retrieve them. The jurisdictional requirement of section 2314 was thus met.

Appellant also claims that the district court erred in several of its evidentiary rulings. "Determinations of admissibility of evidence rest largely within the discretion of the trial judge and will not be disturbed on appeal absent a clear showing of an abuse of discretion." *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983); *see also United States v. Dothard*, 666 F.2d 498, 501 (11th Cir.1982).

■ Appellant Schardar claims that the district court erred in limiting the scope of his testimony. Schardar claims that he should have been allowed to recount not only what he stated to his purchasers, but also what his alleged victims said to him in various telephone communications and meetings, as an exception to the hearsay rule, Fed.R.Evid. 803(24); as indicative of his own state of mind; or for impeachment purposes under Fed.R.Evid. 608.

A reading of the record indicates that Schardar was allowed to testify at length about his understanding of the egg and apple transactions. The district court was correctly declined to allow Schardar to testify as to what his purchasers said to him. These statements did not meet the necessary conditions so as to come in under the hearsay catch-all exception, Fed.R.Evid. 803(24) (trustworthiness, probative character, advance notice to prosecution of use of such statements). Nor are statements made to Schardar *after* his presentation of fraudulent documents to collect on a letter of credit relevant as to Schardar's own state of mind and intent as related to the criminal act.

■ Appellant Schardar also claims that the government's failure to call as witnesses the victims of the egg and apple transactions, coupled with the restriction of his testimony concerning these two deals, violates the confrontation clause. This claim is without merit. *See Turnbough v. Wyrick*, 420 F.Supp. 588, 592 (E.D.Mo.1976) (and cases cited therein), *aff'd*, 551 F.2d 202, 204 n. 4 (8th Cir.1977).

■ With regard to the rug transaction, Schardar wished to testify that Korhani, seller of the rugs, had offered to smoke opium and marijuana with Schardar. The district court was within its discretion in refusing to allow such testimony as irrelevant and prejudicial and an improper attack on the credibility of a witness by extrinsic evidence of a specific instance of misconduct under Fed.R.Evid. 608. *See generally United States v. Cousins*, 842 F.2d 1245, 1249 (11th Cir.1988) (extrinsic testimony of specific instance of misconduct is admissible to contradict material testimony of a prior witness, but not merely to impeach witness's credibility).

■ Appellant Schardar also asserts that the district court erred in allowing the testimony of government witness Arthur Green. Green testified that Schardar offered to sell him sugar that, by its price, Green deduced to be sugar destined for foreign markets.[4] When Green pointed out that he would not be able to sell the sugar domestically, Schardar stated that Schardar could falsify shipping documents to show that the sugar was exported, while in reality Green could divert it to the domestic market. Green demanded to see the sugar before entering into the deal; Schardar claimed on several occasions that he had not yet come into possession of the sugar but soon would. When Green came to the conclusion that there was no sugar and Schardar merely intended to give him false bills of lading, Green cancelled his check given to Schardar to cover freight costs.

**4.** Under law, sugar destined for foreign markets and brought into the United States solely for refining sells at a significantly lower price than sugar destined for domestic resale. The purchase of export sugar and its subsequent divertment into the domestic market would result in a very high profit for the seller.

Schardar claims that it was error to allow this testimony on uncharged misconduct which occurred some nine months after the last act of shipping document fraud charged in the indictment. The district court determined, and we agree, that this testimony was admissible under Fed.R. Evid. 404(b). If extrinsic offense evidence is relevant to an issue other than character and its probative value is not substantially outweighed by any undue prejudice it might cause, the evidence is admissible. *See United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978) (*en banc*). The misconduct to which Green testified was similar to the misconduct present in the transactions forming the basis of the criminal charges (creation and use of false bills of lading) and was relevant to prove appellant Schardar's intent with regard to the falsification of documents in the charged offenses. The district court thus did not abuse its discretion in admitting the testimony.

As a final evidentiary error, Schardar asserts that the trial court erred in refusing to admit certain documents relating to the Kashfia family transactions. Witness Schardar could not identify them as his own business records. The court properly concluded that they were impermissible hearsay.

Appellant also asserts that the district court erred in denying a mistrial based on improper joinder of several counts of the indictment, specifically the joinder of the interstate transportation of stolen goods charge (regarding the rug transaction) with the fraud charges dealing with wire fraud and false bills of lading. "While the Government must show that initial joinder was proper under Rule 8 ... that rule is broadly construed in favor of the initial joinder." *United States v. Davis*, 773 F.2d 1180, 1181 (11th Cir.1985); *see also United States v. Bryan*, 843 F.2d 1339, 1342 (11th Cir.1988). We cannot conclude that the government failed to meet its burden in this regard or that the district court abused its discretion in refusing to grant a severance of the various counts for reasons of prejudice. The tire, bronze tubing, egg and apple transactions all follow a common pattern involving the presentation of false bills of lading. While in the rug transaction appellant Schardar acted as purchaser rather than seller, the transaction involved some of the same problems evidenced in the other transactions—an incorrect bill of lading and an attempted fraud. Joinder was not improper. *Cf. United States v. Pierce*, 733 F.2d 1474, 1476–78 (11th Cir.1984).

As a final point, appellant Schardar argues that during rebuttal argument the prosecutor impermissibly commented on the appellant's failure to call witnesses, thus violating Schardar's right to remain silent. During closing argument, the defense noted that the prosecution had not called as witnesses all members of the Kashfia family involved in the two transactions with Schardar and had produced no victim-witnesses relating to the egg and apple deals. In rebuttal the prosecution attempted to answer this. The prosecution noted that while the government bore the whole burden in the case, the defense had subpoena powers as did the government. This comment was not improper. *See United States v. Ivey*, 550 F.2d 243 (5th Cir.1977) (not improper for prosecution in rebuttal to state that either side could have called as witness manager of airport where drug seizure occurred).

For the above reasons, the appellant's convictions are AFFIRMED.