**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eddy F. FERNANDEZ, Defendant–Appellant.**

No. 88–6102.

United States Court of Appeals, Eleventh Circuit.

July 5, 1990.

---

Lauri Waldman Ross, Kelly, Black, Blac, Byrne, Craig & Beasley, P.A., Miami, Fla., for defendant-appellant.

Norman A. Moscowitz, Linda Collins Hertz, Harriett R. Galvin, Asst. U.S. Attys. Miami, Fla., for plaintiff-appellee.

Before FAY and COX, Circuit Judges, and GODBOLD, Senior Circuit Judge.

PER CURIAM:

Eddy F. Fernandez was convicted on counts of conspiracy, wire fraud, conceal-ment of material facts and theft involving a program receiving federal funds. Fernan-dez's criminal activity was associated with the handling of large sums of money dis-tributed from the Health Care Financing Administration (HCFA) to International Medical Centers, Inc. (IMC), a large health maintenance organization (HMO) that em-ployed Fernandez initially as Chief Finan-cial Officer and later as Executive Vice–President for network operations. On ap-peal he raises five separate issues. As stated by counsel, these are:

    I. Whether defendant's renewed Motion for Judgment of Acquittal should have been granted on the basis of insufficient evidence of (1) an April 30 agreement of understanding criminalizing the defen-dant's acts; (2) communication to the de-fendant of the existence of any such agreement or understanding.

    II. Whether defendant's renewed Mo-tion for Judgment of Acquittal should have been granted on Counts I (conspir-acy to defraud) and IV (aiding and abet-ting wire fraud) where all of the defen-dant's "overt acts" predated the April 30 "agreement" criminalizing his conduct.

    III. Whether defendant's renewed Mo-tion for Judgment of Acquittal should have been granted on Count II (§ 666, § 2) where (1) the funds at issue were the property of IMC and thus could not be stolen or misapplied; and (2) were used for legal fees approved for payment in the ordinary course of business.

    IV. Whether defendant's renewed Mo-tion for Judgment of Acquittal should have been granted on Count V (§ 22, 1001) where the statements made by de-fendant were (1) either true; or (2) fell within the "exculpatory no" exception to § 1001.

    V. Whether the trial court erroneously imposed a pre-guideline sentence on this defendant, where the defendant's indict-ment, conviction and sentencing all took place after the effective date of the Sen-tencing Reform Act, and the new guide-lines were more favorable than the sen-tence imposed.

    By way of a post-trial Order dated November 21, 1988, the district court dealt with the substance of issues I through IV. A review of the record leads us to the same conclusions as those expressed by the trial judge. Finding no merit in these conten-tions, we affirm the rulings of the district court for the reasons stated in that Order.

    The last issue raised is equally with-out merit. Congress explicitly provided that the Sentencing Reform Act with its guidelines applies only to offenses commit-ted after its effective date of November 1, 1987. See Sentencing Act of 1987, Pub.L. No. 100–182, § 2(a), 101 Stat. 1266, 1266 (1987) and Note following 18 U.S.C. § 3551; *United States v. Burgess*, 858 F.2d 1512,

1514 (11th Cir.1988). The dates of the indictment, conviction and sentencing are simply irrelevant.

AFFIRMED.

## APPENDIX

United States District Court

Southern District of Florida

Case No. 88-77-CR-MARCUS

Filed Nov. 21, 1988

United States of America, Plaintiff,

vs.

Eddy Fernandez, Defendant.

### ORDER

THIS CAUSE has come before the Court upon the Motion of Defendant for Judgment of Acquittal or in the Alternative for a New Trial or Arrest of Judgment pursuant to Fed.R.Cr.P. 29(c), 33 and 34; upon Defendant's Supplemental Motion for Judgment of Acquittal, and Defendant's Motion for Release on Bond Pending Appeal. Each of these motions was denied by the Court at the time of Defendant's sentence. We write this opinion in order to detail our reasons for these rulings.

This cause was recently tried to a jury and the Defendant was convicted of four counts—conspiracy to commit wire fraud, theft concerning programs using federal funds and making false statements (18 U.S.C. § 371); aiding and abetting theft concerning programs using federal funds (18 U.S.C. §§ 2 and 666); aiding and abetting wire fraud (18 U.S.C. §§ 2 and 1343); and aiding and abetting a cover up (18 U.S.C. §§ 2 and 1001). The jury was unable to reach a verdict as to Count III. At its core, the Defendant claims that the evidence was simply insufficient to establish that he knowingly and willfully committed the offenses as to which he stands convicted. He also claims that this Court committed error in admitting evidence concerning the Defendant's role in obtaining a $50,000 check to be used for Recarey's bond as to an earlier indictment lodged against Recarey. Finally he claims that the evidence was insufficient to establish an agreement between the Government and IMC.

In ruling on a motion for judgment of acquittal after conviction, the evidence must be considered in a light most favorable to the Government and all inferences must be reasonably drawn in favor of the Government, in order to determine whether there was substantial evidence from which a jury could reasonably find the Defendant's guilt beyond a reasonable doubt. *See United States v. Gregory,* 730 F.2d 692, 706 (11th Cir.1984), *cert. denied,* 469 U.S. 1208 [105 S.Ct. 1170, 84 L.Ed.2d 321] (1985). Moreover, a determination whether to grant a new trial because of the insufficiency of the evidence requires the Court to determine whether the verdict was contrary to the weight of the evidence. To warrant a new trial, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Martinez,* 763 F.2d 1297, 1313 (11th Cir.1985).

Under either applicable standard, the evidence sufficiently supported the jury findings of guilty. Upon the evidential foundation presented at trial, a jury could find the Defendant's knowing and willful participation in each of the substantive counts charged and the conspiracy to defraud.

Essentially, the crimes alleged in this case revolved around a proposed scheme wherein the Defendant and co-conspirator, Miguel Recarey, conspired to obtain for Recarey's benefit certain Medicare funds contrary to the Government's clear understanding that Recarey would have no access to or benefit of these funds. The evidence established that the Government sent these funds to IMC after having obtained Recarey's agreement to these restrictions, and only after having satisfied itself that appropriate arrangements had been made to safeguard these monies. In contravention of the understanding, the Government charged and sufficiently established that by fraudulent means Recarey and Fernandez obtained some $355,000 of these Medicare funds in order to pay the

legal fees of Recarey's criminal defense lawyer.

The evidence overwhelmingly established the Defendant's role and involvement in making the particular arrangements for the transfer of these monies to Recarey's lawyer's bank account. Moreover, notwithstanding the Defendant's assertion to the contrary, there was established substantial evidence from which a jury could infer beyond a reasonable doubt that the Defendant knew and understood fully that Recarey was prohibited from taking or using any of these funds in order to pay his legal fees. Among other things, the evidence established that Fernandez was a close and trusted associate of Mr. Recarey; that Fernandez was intimately involved in Recarey's financial affairs and in the financial affairs of IMC; and that Recarey relied upon Fernandez to assist him with paying expenses related to criminal charges lodged against Recarey on April 27, 1987.

The evidence also established that the Defendant Fernandez knew of IMC's substantial cash flow problems and financial difficulties in April of 1987, and that Fernandez arranged to have the $355,000 payment made surreptitiously and in a manner different from routine procedures normally employed by IMC for the making of such disbursements. Notably, in this case the bills for Recarey's legal fees did not pass through the office of general counsel, and, indeed, the evidence established that Fernandez sought a number of blank checks with which to effect the payments from Jose Gonzalez. Fernandez did not tell Gonzalez what the checks were for. The testimony of Orlando Bichara also amplified the knowledge of Fernandez. Moreover, Fernandez' close involvement in the entire transaction supplied additional evidence as to the irregularity of the transaction. The Defendant, who was also charged as an aider and abettor in carrying out the scheme to defraud, actively participated throughout. This participation included providing instructions to the bank, instructions to Bichara, and having a number of conversations with Mr. Ward. The jury also could infer the criminal intent of Fernandez from a series of statements to John Ward about the incident, some of which were arguably false and exculpatory. In sum, we are satisfied that the evidence was sufficient to permit the jury to find that Fernandez acted knowingly and with criminal intent to obtain Medicare funds for payment of Recarey's legal fees. Accordingly, the motion for judgment of acquittal or for new trial on the grounds of sufficiency of evidence as to Defendant's knowledge is DENIED.

Defendant also claims that this Court erred in admitting evidence pertaining to his having obtained a $50,000 fee from REI for use by Recarey for bond money. For the reasons stated at length on the record at trial, this application too is DENIED.

Finally, for the first time Defendant now urges in his Supplemental Motion an additional basis for the entry of a judgment of acquittal—the insufficiency of the evidence to establish an "agreement" or "clear understanding" between the Government and IMC that Recarey would have no access to the May capitation funds. At the outset, we note that Defendant did not consider this a substantial fact question and never challenged that there was an agreement at trial. Rather the essence of the defense, presented with great skill and vigor by defense counsel, was that the Defendant did not know that John Ward and the Health Care Finance Administration officials had an understanding that the May capitation funds could not be used by IMC to cover the checks and wire transfers issued during the month of April 1987. (See Jury Instruction No. 15). Indeed at trial the Defendant never sought any jury instruction from the Court relating to the nature and meaning of any contract or agreement between the Government and IMC.

Second, we observe again that in determining the sufficiency of the evidence, the evidence must be viewed in a light most favorable to upholding the verdict. *See United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir.), *cert. denied*, 467 U.S. 1208 [104 S.Ct. 2396, 81 L.Ed.2d 353] (1984).

Taken in a light most favorable to the Government, the evidence established, among other things, that representatives of both IMC and HCFA believed and understood that IMC was obligated to set up a segregated bank account for receipt of the capitation funds, and that Recarey was absolutely barred from access to those funds. The testimony at trial established that Government officials, including the Administrator of HCFA, Dr. Roper, authorized the release of some $30 million in capitation funds only after being satisfied that Recarey could not reach those funds. The evidence also indicated that Recarey well knew that the segregated account was designed, intended and set up precisely in order to prohibit his access. Indeed John Ward testified that he told Recarey that the Government intended to bar Recarey from having anything at all to do with IMC.

In the third place, we observe that the essence of the crimes charged and verdicts returned was that the Defendant and Recarey knowingly and intentionally defrauded the Government by fraudulently inducing HCFA to send the capitation payment by intentionally misrepresenting that Recrey would have no access to the funds, nor that he could benefit from the payment. Regardless of whether there was a binding agreement between IMC and HCFA, at core, the issue presented was whether the Defendant had the requisite knowledge and specific intent to conspire to defraud and defraud the Government. Again, we believe the evidence was sufficient to take the matter to the jury.

Defendant has also sought release on bond pending appeal. Eligibility for bond pending appeal is governed by 18 U.S.C. Section 3143(b). The Government has conceded that the Defendant does not pose a danger to the community, but argues that the Defendant poses a risk of flight. The Government also contends that no substantial question of law or fact is raised by the appeal. As to risk of flight, the Government points to the fact that Defendant was an intimate of Recarey, who is already a fugitive, and that having received a four-year prison term and a $100,000 fine, he has considerable incentive to flee. The Government also observes that Recarey, who fled in October of 1987, made financial arrangements "to take care of" the Defendant. We disagree and because of the Defendant's substantial ties to this community, his ready appearance at all Court hearings, and the stringent conditions of bond imposed, have permitted the Defendant to voluntarily surrender on January 3, 1989 to the Bureau of Prisons.

However, in order for a defendant to remain on bond pending appeal, we must also be satisfied "that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal, an order for a new trial, or a sentence that does not include a term of imprisonment." 18 U.S.C. § 3143(b)(2). We find that the Defendant has failed to raise such an issue and therefore has failed to satisfy the conditions necessary to allow continuation of bond pending appeal.

The Eleventh Circuit has held that "a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir.1985) (adopting *United States v. Miller*, 753 F.2d 19 (3d Cir.1985), *cert. denied*, [479 U.S. 1018] 107 S.Ct. 669 [93 L.Ed.2d 721] (1986)). As we have observed already, Defendant has raised three questions: the sufficiency of the evidence as to his knowledge that Recarey was prohibited from taking or using the funds in order to pay his legal fees; the sufficiency of the evidence as to the nature and extent of the understanding or agreement between the Government and IMC; and, finally, the evidentiary ruling admitting in evidence a $50,000 check from REI for use on Recarey's surety bond in the first indictment. For the reasons detailed at length already, the sufficiency issues do not raise substantial questions of fact or law. As to the receipt of the $50,000 check, we believe that such a determination is well within the discretion accorded the trial court. *See United States v.*

*Schardar,* 850 F.2d 1457, 1463 (11th Cir. 1988). We found at trial that the check was very closely related to the crime charged and to Defendant's alleged role. The check was issued in a time frame absolutely contemporaneous with the charges; the check bore on Recarey's relationship with Fernandez and more particularly his reliance upon Defendant in making financial arrangements in connection with criminal charges then pending against Recarey. The crime charged in this case was that Fernandez arranged for the payment of Recarey's criminal defense attorney's fees out of IMC funds. The $50,000 check was issued only about *one week* earlier. We weighed fully the questions of undue prejudice and confusion and found specifically that the probative value of receiving the check substantially outweighed any danger. At trial the Court excluded a great amount of evidence offered by the Government as to the post-conspiracy payments of substantial amounts by Recarey to Fernandez, in order to focus the triable issues on the precise charges alleged and avoid the dangers of undue prejudice and confusion. The $50,000 payment, however, could not have been more focused on the issues of Defendant's relationship with Recarey, his knowledge, motive and intent. And we can find no "close" or "substantial" question as to this matter. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant's post-trial Motions for Judgment of Acquittal or for a New Trial or Arrest of Judgment, and for bond pending appeal are DENIED.

DONE AND ORDERED in Miami, Florida this 21st day of November, 1988.

/s/Stanley Marcus
STANLEY MARCUS
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA